IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
WESTERN DIVISION

| | | |
|---|---|---|
| **Martha Polinsky** | : | |
| 457 S Norwalk Road, W. | | Case No.:  1:10cv2544 |
| Norwalk, OH 44857 | : | |
| | | Judge Benita Y. Pearson |
| **Robert Polinsky** | : | |
| 457 S Norwalk Road, W. | | **FIRST AMENDED COMPLAINT with** |
| Norwalk, OH 44857 | : | **Class Action Allegations** |
| | | |
| Plaintiffs, | : | **JURY DEMAND ENDORSED HEREON** |
| | | |
| v. | : | |
| | | |
| **Community Health Partners Regional** | : | |
| **Health System** | | |
| 3700 Kolbe Road | : | |
| Lorain, OH 44053 | | |
| Also serve: | : | |
| Statutory Agent: Black River | | |
| Corporate Services, Inc | : | |
| 35765 Chester Road | | |
| Avon, OH 44011 | | |
| | | |
| **Hal D. Burke** | | |
| Suite 237, Spitzer Bldg. | | |
| 520 Madison Ave. | | |
| Toledo, OH 43604 | | |
| | | |
| **Michael J. Burke** | | |
| Suite 237, Spitzer Bldg. | | |
| 520 Madison Ave. | | |
| Toledo, OH 43604 | | |

**Scheer, Green and Burke, L.P.A.**
Suite 237, Spitzer Bldg.
520 Madison Ave.
Toledo, OH 43604

       Defendants

**AllianceOne Receivables Management, Inc.**
c/o Statutory Agent
CT Corporation Systems
1300 E. Ninth Street
Cleveland, OH 44114

       Defendant/ Third Party Defendant

Now come Plaintiffs Martha and Robert Polinsky by and through the undersigned counsel and allege as follows:

## I.    INTRODUCTION

1.    This is a class action brought on behalf of patients/consumers who were victims of a scheme by a health care provider and two debt collectors to circumvent their health insurance and collect an inflated amount from the patients themselves.

## II.    PARTIES

2.    Plaintiffs Martha and Robert Polinsky, husband and wife, are individuals residing in Norwalk, Huron County, Ohio.

3.    Defendant Community Health Partners Regional Health System ("Community Health Partners") is a not-for-profit corporation organized under the laws of the State of Ohio with its principal place of business in Lorain, Lorain County, Ohio.

4.    Defendants Hal D. Burke and Michael J. Burke are individual attorneys licensed to practice law in the State of Ohio.  Upon information and belief, both Hal D. Burke and

Michael J. Burke are principals in the law firm of Scheer, Green and Burke, L.P.A., which maintains offices and regularly conducts business in Toledo, Lucas County, Ohio.

5.      Defendant Scheer, Green and Burke, L.P.A. is a licensed professional association organized under the laws of the State of Ohio with its principal place of business in Toledo, Lucas County, Ohio.  Collectively Defendants Hal D. Burke, Michael J. Burke and Scheer, Green and Burke, L.P.A. shall be referred to as the "Scheer, Green and Burke defendants."

6.      Defendant/Third Party Defendant AllianceOne Receivables Management, Inc. ("AllianceOne") is a business organization organized under the laws of the State of Delaware, which has contracted with an Ohio medical facility (Community Health Partners) to collect medical debts from Ohio consumers.  AllianceOne regularly transacts business in this state, derives substantial revenue from so doing and has appointed an agent for service of process in Ohio.

### III.  JURISDICTION

7.      This Court has personal jurisdiction over all Defendants, which are all residents of the State of Ohio, have their principal places of business in this State, and/or regularly transact business here.

8.      Venue in proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) as a substantial portion of the events and omissions leading to this claim occurred in this judicial district.

### IV.  COMMON FACTUAL ALLEGATIONS

9.      Plaintiffs repeat and incorporate herein all previously pleaded averments.

10.     On February 12, 2007, Martha Polinsky was involved in a motor vehicle accident in Perkins Township, Erie County, Ohio.  The accident was generally caused when

another driver, Gregory Hurst, rear-ended Ms. Polinsky while she was stopped at a traffic light.

11.     As a result of this collision, Ms. Polinsky suffered serious personal injuries and sought treatment with Community Health Partners.  In particular, Community Health Partners performed two M.R.I. scans: one in December 2007 and a second in April 2008.

12.     At the time of the collision until present, Ms. Polinsky was and is insured under a health insurance policy issued by Anthem Blue Cross and Blue Shield ("Anthem"), which provided coverage for, subject to certain co-payments and deductibles, the treatment provided to Ms. Polinsky by Community Health Partners, including the two M.R.I. scans.

13.     Plaintiffs elected to have these M.R.I. scans performed at Community Health Partners after determining that Community Health Partners accepted their Anthem insurance plan.

14.     At all times, Ms. Polinsky provided Community Health Partners with the information necessary to submit a claim for reimbursement to Anthem.  Community Health Partners did, in fact, submit some claims related to Ms. Polinsky's treatment to Anthem for reimbursement, including some bills associated with the M.R.I. scans.  As set forth below, Community Health Partners declined to submit the remaining bill for the M.R.I. scans to Anthem for reimbursement.

15.     Upon information and belief, Community Health Partners has entered into so-call "preferred provider" contracts with various health insurers such as Anthem.  Under the terms of such agreements, providers such as Community Health Partners have agreed to accept a reduced "preferred payment" for medical services rendered to Anthem enrollees.

16.     The "preferred payment" agreed between the health care provider and health insurer is substantially less than the un-discounted "retail" or "list" price charged to individuals expected to pay for health care services out of their own pockets.

17.     Plaintiffs, like most members of the public covered by private health insurance, rely on lists of "preferred providers" to identify health care providers who will "accept" their insurance by providing health care services and submitting directly to their health plan according to its terms.

18.     After the traffic collision, Ms. Polinsky also possessed a chose in action against Mr. Hurst under tort theories such as negligence ("the Personal Injury Claim").  The existence of a possible Personal Injury Claim would be readily apparent to anyone familiar with the circumstances surrounding the traffic accident (a rear-end collision) and Ohio tort law.

19.     Upon learning of the Personal Injury Claim, Community Health Partners stopped submitting bills related to Ms. Polinsky's treatment to Anthem and refused to do so.

20.     Upon information and belief, Community Health Partners has a practice of identifying patients with Personal Injury Claims or other alternative sources of payment for health care services.  Community Health Partners then targets these individuals for billing abuse.

21.     Community Health Partners systematically and intentionally seeks compensation from other sources in order to avoid their patients' health insuring corporation.  The reason for this practice is pecuniary.  Community Health Partners hopes to collect their full, undiscounted "retail" rates for medical services, as opposed to the lower "preferred

provider rate" negotiated between Community Health Partners and the patients' health insurer.

22.     This practice violates Ohio law.  R.C. § 1751.60(A) requires health care providers who have entered into a "preferred provider" contract with a health insurer to seek compensation "solely" from the health insurer and not "under any circumstance" from the enrollee/subscriber directly.

23.     The billing and collection practices described herein are further unlawful pursuant to R.C. § 3923.81(A), which provides, in relevant part:

> If a person is covered by a health benefit plan issued by a sickness and accident insurer, health insuring corporation, or multiple employer welfare arrangement and the person is required to pay for health care costs out-of-pocket or with funds from a savings account, the amount the person is required to pay to a health care provider or pharmacy shall not exceed the amount the sickness and accident insurer, health insuring corporation, or multiple employer welfare arrangement would pay under applicable reimbursement rates negotiated with the provider or pharmacy. *** The requirements of this division do not apply to amounts owed to a provider or pharmacy with whom the sickness and accident insurer, health insuring corporation, or multiple employer welfare arrangement has no applicable negotiated reimbursement rate.

24.     In Plaintiffs' case, Community Health Partners, after refusing to submit the bill for Plaintiffs covered services Anthem, took various steps to collect from Plaintiffs directly.

25.     Among other collection procedures, Community Health Partners hired AllianceOne and the Scheer, Green and Burke defendants to collect the portion of its inflated medical bill in the amount of $3356.55 for the M.R.I. scan.  This charge was intentionally not submitted to Anthem for payment.

26.     If timely submitted to Anthem, this charge was for a covered medical service and would have been paid by Anthem at the negotiated reimbursement rate.

6

27.     Specifically, Community Health Partners contracted with AllianceOne to collect on the inflated medical bill and, in turn AllianceOne hired the Scheer, Green and Burke defendants.  In the alternative, Community Health Partners directly hired both the Scheer, Green and Burke defendants and AllianceOne.

28.     The allegations set forth  by Community Health Partners, AllianceOne and Scheer, Green and Burke defendants are currently inconsistent in their respective pleadings as they refer to the relationship between the three entities.  These three entities, Community Health Partners, AllianceOne and Scheer, Green and Burke defendants, attempt to point the blame at each other for the wrongful billing and collection activities directed toward the Plaintiffs.

29.     The Scheer, Green and Burke defendants took various steps to collect the $3356.55 debt, including billing Plaintiffs, contacting Plaintiffs counsel to demand payment on many occasions including but not limited to in July 2010, September 2010 and October 7, 2010.

30.     The Scheer, Green and Burke defendants called Plaintiffs directly, wrote letters to Plaintiffs and filed pleadings within the case pending in Norwalk Municipal Court.

31.     Specifically, the Scheer, Green and Burke defendants filed a lawsuit on behalf of Community Health Partners against Plaintiffs herein in the Norwalk Municipal Court in Huron County, Ohio on or about October 1, 2009.  The Court issued the summons on Octobery 1, 2009.   The Polinskys were successfully served with the Complaint on October 7, 2009.

32.     The case was styled Case No. CVF 0901976 and was voluntarily dismissed on February 5, 2010 when the Scheer, Green and Burke defendants were unable to attend a

7

status conference.  Through the fall of 2010, the Scheer, Green and Burke defendants and AllianceOne continued to call and write Plaintiffs directly to collect the inflated medical bill.  In fact, these calls became so frequent and harassing that the Plaintiffs were forced to stop answering their telephone during this period.

33.     While Case No. CVF 0901976 was pending, the Scheer, Green and Burke defendants continued to actively take steps to prosecute the action and to collect on the invalid medical debt.  In order to further prosecute their claims against the Plaintiffs, the Scheer, Green and Burke defendants made requests for continuances, to appear by telephone and other motions with respect to case management in order to avoid dismissal with prejudice by the Court.

34.     After Case No. CVF 0901976 was dismissed, the Scheer, Green and Burke defendants and AllianceOne nonetheless continued to track the progress of the Personal Injury Claim, continued to attempt to collect the inflated medical bill and demanded that Defendants be paid from any settlement of the Personal Injury Claim.  The Scheer, Green and Burke defendants and AllianceOne further threatened to re-file an action substantially similar to Case No. CVF 0901976 in the event that Defendants were not paid the inflated medical debt.

35.     The Scheer, Green and Burke defendants and AllianceOne continued to attempt to collect the inflated medical debt including threatening to re-file the collection action as late as October 7, 2010.

36.     At all times relevant herein, the Scheer, Green and Burke defendants were aware that the $3356.55 debt that they were collecting should have been submitted to Plaintiffs' health insurer, but was not.  Further, the Scheer, Green and Burke defendants were

8

repeatedly informed that this debt was not valid under Ohio law.  Upon information and belief, the he Scheer, Green and Burke defendants kept AllianceOne informed about the status of Plaintiffs' purported debt, but both entities nonetheless decided to continue collection.

37.     In the time since the initial filing of this action, Community Health Partners, AllianceOne and the Scheer, Green and Burke defendants have asserted various claims cross-claims against each other.

38.     Community Health Partners asserts that it did not directly hire the Scheer, Green and Burke defendants, but contracted with or hired AllianceOne, which in turn contracted with or hired the Scheer, Green and Burke defendants to collect from Plaintiffs.

39.     Community Health Partners contracted with AllianceOne to collect this charge from the Plaintiffs.

40.     Pursuant to the contract between Community Health Partners and AllianceOne, AllianceOne was prohibited from commencing any legal action on behalf of, or in the name of, Community Health Partners and were limited to commencing legal action on behalf of, or in the name of, AllianceOne.

41.     The Scheer, Green and Burke defendants, as instructed by AllianceOne, nonetheless filed Case No. CVF 0901976 on behalf of Community Health Partners as the named Plaintiff.

42.     Further, throughout the relevant time period, the Scheer, Green and Burke defendants held themselves out as representing, and collecting on behalf of Community Health Partners, a client that they did not represent.

43.     AllianceOne and the Scheer, Green and Burke defendants made false representations to the Plaintiffs by claiming authority to file an action on behalf of Community Health Partners.

44.     Further, the Scheer, Green and Burke defendants now assert, among other things, that they were acting on behalf of and as agent for, AllianceOne throughout the relevant time period.  To the extent that AllianceOne directed, controlled or instructed the Scheer, Green and Burke defendants to take action on its behalf, or that the Scheer, Green and Burke defendants reasonably relied on (and communicated to Plaintiffs) false or misleading information created, developed or furnished by AllianceOne, AllianceOne is liable for collection activity undertaken by the Scheer, Green and Burke defendants in its name or on its behalf.

45.     In October 2010, Plaintiffs wrote to Experian to dispute the validity of a tradeline reported by AllianceOne on their credit report.  Experian received and signed for the certified letter on October 5, 2010.  Upon information and belief, Experian contacted AllianceOne regarding the disputed debt.  AllianceOne nonetheless continued its collection activity by continuing to report this debt as valid.

## V.   CLASS ACTION ALLEGATIONS

46.     Plaintiffs repeat and incorporate herein all previously pleaded averments.

47.     Plaintiff brings this class action pursuant to Fed.R.Civ.P 23, on behalf of herself and all others similarly situated, with the members of the Classes being defined as follows:

> Class A:   All Ohio residents who received medical services from Community Health Partners and, according to the records of Community Health Partners, were covered by a health benefit plan issued by a sickness and accident insurer, health insuring corporation, or multiple employer

welfare arrangement and who were subjected to collection activity for amounts in excess of the negotiated reimbursement rate.

Class B:    All Ohio residents who received medical services from Community Health Partners and, according to the records of Community Health Partners, were covered by a health insuring corporation and who were subjected to collection activity for the covered services in excess of amounts due as co-payments and/or deductibles.

Class C:    All Ohio residents who received medical services from Community Health Partners and, according to the records of Community Health Partners, were covered by a health benefit plan issued by a sickness and accident insurer, health insuring corporation, or multiple employer welfare arrangement and who were subjected to debt collection activity by the Scheer, Green and Burke defendants and/or AllianceOne for amounts in excess of the negotiated reimbursement rate.

Class D:  All Ohio residents against whom a complaint was filed by AllianceOne and the Scheer, Green and Burke defendants and the named plaintiff is Community Health Partners.

48.    The members of the Classes are so numerous that joinder would be impracticable. Plaintiff estimates that there are at least a thousand such persons.

49.    A majority of the Classes can be indentified due to the fact that Defendants track: (a) which patients have health insurance; (b) which patients have submitted claims to health insurance plans; (c) which patients Defendants attempt to collect from directly; and (d) which patients Defendants filed a lawsuits against.

50.    The claims of Plaintiffs and the members of the Classes raise common questions of law and fact that predominate over any questions affecting only individual Class members, including:

      a.    Was the class member insured at the time of treatment?

      b.    Did Community Health Partners submit the claim to the health insuring corporation?

11

    c. Did Community Health Partners refuse to submit the claim to the health insuring corporation?

    d. Did Community Health Partners attempt bill Plaintiffs and class members for out-of-pocket expenses in excess of what their health insurance would pay for the same services.

    e. Are the billing and collection practices complained of herein unlawful pursuant to R.C. § 1751.60(A) and/or R.C. §3923.81(A).

    f. Are the Scheer, Green and Burke defendants "debt collectors" as defined by the Fair Debt Collection Practices Act ("FDCPA")?

    g. Is AllianceOne a "debt collector" as defined by the Fair Debt Collection Practices Act ("FDCPA")?

    h. Did the Scheer, Green and Burke defendants violate the FDCPA by attempting to collect an invalid debt?

    i. Was the conduct of Defendants malicious and done with intent to harm Plaintiffs?

    j. Is billing for hospital services a "consumer transaction" under R.C. § 1345.01?

    k. Do the Defendants fit the definition of "supplier" under R.C. § 1345.01(C)?

    l. Did Defendants violate R.C. § 1345.01?

51. Defendants' conduct in relation to each of the Class members was virtually identical.

52. The claims of the Plaintiff are typical of the claims of members of the Classes.

12

53.     The representative parties will fairly and adequately represent the interests of the members of the Classes.

54.     Both Plaintiffs and their counsel meet the adequacy requirement.

55.     The Plaintiffs are not antagonistic to the other members of the Classes and are, in fact, similarly situated with respect to Defendants.  The interests of the Plaintiffs in this matter are identical to those of the members of the Classes.

56.     The Plaintiffs' legal counsel has a time-honored reputation for competency, experience and skill in handling complex litigation, including class actions.  Their counsel's ability to skillfully litigate cases such as the present case is well-documented. The Plaintiffs' counsel has and will continue to dedicate high levels of skill and dedication to the vigorous prosecution of this class action litigation.

57.     A class action is a superior method to other methods of resolution.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

58.     The expense and burden of individual litigation are impediments to individual Class members seeking redress for the wrongful conduct alleged.

59.     Further, prosecution of separate actions against Defendants would create the risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct regarding a medical provider's duty to submit claims to a health insurance corporation and to collect only the amount negotiated between the patient and his or her health plan.

60.     The current action is maintainable under Fed.R.Civ.P 23(b)(2) and 23(b)(3) standards.

61. This class action is maintainable under Fed.R.Civ.P 23(b)(2) because Defendants used a common scheme to avoid its statutory and contractual duties to the Plaintiff Classes.

62. If each individual member of the Classes was required to bring a separate action, there is a substantial risk that the numerous outcomes may establish incompatible standards.

63. This action is maintainable under Fed.R.Civ.P 23(b)(3) because a question of law or fact predominates over any question affecting only individual members and that a class action is superior method to other mechanisms available.

### FIRST CAUSE OF ACTION:
### BREACH OF CONTRACT
### As to Community Health Partners (with class action allegations)

64. Plaintiffs repeat and incorporate herein all previously pleaded averments.

65. Plaintiffs entered into a contract with Community Health Partners for the provision of medical services. Generally Community Health Partners agreed to provide medical services to Ms. Polinsky in exchange for payment. Community Health Partners further agreed to bill Ms. Polinsky's insurer for these medical services.

66. Upon information and belief, the terms of this contract are contained in various form documents executed by Plaintiffs at the time treatment was provided by Community Health Partners. Plaintiffs do not attach these documents to this complaint as they are in the exclusive possession of Community Health Partners.

67. Community Health Partners breached its contract with Plaintiffs by failing to bill Ms. Polinsky's health insurer and by billing them directly in violation of Ohio law as set forth above.

68.     Community Health Partners further breached the covenant of good faith and fair dealing implicit in every contract by, among other things, billing in violation of Ohio law as set forth above and by taking opportunistic advantage of Plaintiffs by attempting to collect more than they are due under the terms of Plaintiffs' Anthem plan and bypassing the payment available under that plan.

69.     Plaintiffs have been damaged by Community Health Partners' breach because they were billed for an amount greater than what they owed, were subjected embarrassing and harassing collection activities, were unable to obtain timely reimbursement because Community Health Partners' delayed submitting a claim, suffered serious financial hardships including collection harassment and damage to their credit reputation.

### SECOND CAUSE OF ACTION:
### BREACH OF CONTRACT- THIRD PARTY BENEFICIARY
### As to Community Health Partners (with class action allegations)

70.     Plaintiffs repeat and incorporate herein all previously pleaded averments.

71.     As enrollees in the Anthem insurance plan, Plaintiffs are intended third-party beneficiaries of any preferred provider agreement between Community Health Partners and Anthem.

72.     Community Health Partners holds itself out as "accepting" Plaintiffs' Anthem Health insurance plan.  Plaintiffs, like most patients with health insurance, rely on whether a provider "accepts" their health insurance when deciding where to seek medical services.

73.     All three parties benefit from this arrangement.  Plaintiffs and Anthem are able to obtain medical services at a discounted rate.  Community Health Partners gains access to a pool of additional customers: Anthem enrollees.

74.    Community Health Partners breached its contract with Anthem by billing Plaintiffs directly in violation of Ohio law as set forth above, by billing Plaintiffs in an amount greater than what they were owed and by refusing to bill or accept payment from Anthem.

75.    Community Health Partners further breached the covenant of good faith and fair dealing implicit in every contract by, among other things, billing in violation of Ohio law as set forth above and by taking opportunistic advantage of Plaintiffs by attempting to collect more than they are due under the terms of Plaintiffs' Anthem plan and bypassing the payment available under that plan.

76.    Plaintiffs have been damaged by Community Health Partners' breach because they were billed for an amount greater than what they owed, were unable to obtain timely reimbursement because Community Health Partners' delayed submitting a claim, were subjected embarrassing and harassing collection activities, suffered serious financial hardships including collection harassment and damage to their credit reputation.


### THIRD CAUSE OF ACTION:
### BREACH OF FIDUCIARY DUTY
### As to Community Health Partners (with class action allegations)

77.    Plaintiffs repeat and incorporate herein all previously pleaded averments.

78.    According to standard practice in Ohio, health care providers generally directly invoice health insurers for health care services rendered to their insured.

16

79.     As a general matter, an individual patient has no knowledge of when or if a provider submits a bill to his or her insurer.   After presenting evidence of health coverage, patients rely on the provider to properly invoice their health insurer.

80.     Patients further rely on providers' representations that they "accept" their health care plans.

81.     By representing that they "accepted" a particular health insurance plan and collecting billing details at the time of admission, Community Health Partners established a fiduciary duty with its patients to submit timely claims for reimbursement to their health insurance plans.

82.     Community Health Partners intentionally and systematically breached this duty by refusing to submit claims to health insurers when another source of payment may be available as set forth above.

83.     Plaintiffs have been damaged by Community Health Partners' breach of fiduciary duties because they were billed for an amount greater than what they owed, were subjected embarrassing and harassing collection activities, were unable to obtain timely reimbursement because Community Health Partners' delayed submitting a claim, suffered serious financial hardships including collection harassment and damage to their credit reputation.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF OHIO PUBLIC POLICY**
**As to Community Health Partners (with class action allegations)**

84.     Plaintiffs repeat and incorporate herein all previously pleaded averments.

85.     As a matter of public policy, Community Health Partners has an obligation to comply with R.C. § 1751.60(A).  Defendants failed to comply with their obligations under R.C. § 1751.60(A):

> Except as provided for in divisions (E) and (F) of this section, every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the heath insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles.

86.     Further, as a matter of public policy, Community Health Partners has an obligation to comply with R.C. § 3923.81(A), which provides, in relevant part:

> If a person is covered by a health benefit plan issued by a sickness and accident insurer, health insuring corporation, or multiple employer welfare arrangement and the person is required to pay for health care costs out-of-pocket or with funds from a savings account, the amount the person is required to pay to a health care provider or pharmacy shall not exceed the amount the sickness and accident insurer, health insuring corporation, or multiple employer welfare arrangement would pay under applicable reimbursement rates negotiated with the provider or pharmacy. *** The requirements of this division do not apply to amounts owed to a provider or pharmacy with whom the sickness and accident insurer, health insuring corporation, or multiple employer welfare arrangement has no applicable negotiated reimbursement rate.

87.     Plaintiffs have been damaged by Community Health Partners' violation of Ohio public policy because they were billed for an amount greater than what they owed, were subjected embarrassing and harassing collection activities, were unable to obtain timely reimbursement because Community Health Partners' delayed submitting a claim, suffered serious financial hardships including collection harassment and damage to their credit reputation.

### FIFTH CAUSE OF ACTION:
### VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT

### As to Community Health Partners (with individual allegations only)

88.     Plaintiffs repeat and incorporate herein all previously pleaded averments.

89.     Ohio's Consumer Sales Practices Act, R.C. 1345.01 *et seq.* ("CSPA") defines "consumer transaction" as a sale, lease assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family or household, or solicitation to supply any of these things."  R.C. § 1345.01(A).  Although the Act specifically exempts transactions with physicians, a transaction between a hospital and the consumer is not exempted. *Summa Health System v. Vinigre* (2000), 140 Ohio App.3d 780, 795; *Elder v. Fischer* (1998), 129 Ohio App. 3d 209, 215; *Thorton v. Meredia Suburban Hospital*, No. 59405, unreported (Cuyahoga Co. App., November 21, 1991).  This is particularly true when the issue at hand questions the business practices of the facility, not the medical treatment. *Elder*, 129 Ohio App. 3d at 221.

90.     Billing is a business practice and not related to treatment.

91.     Community Health Partners' billing practices as described above constitute "unfair and deceptive" trade practices pursuant as well as "unconscionable" trade practices as defined by the CPSPA.

### SIXTH CAUSE OF ACTION:
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### As to the Scheer, Green and Burke Defendants and/or AllianceOne
### (with class action allegations)

92.     Plaintiffs repeat and incorporate herein all previously pleaded averments.

93.     The Scheer, Green and Burke defendants are regularly engaged in the business of collecting debt in Ohio.  In fact, the home page of the firm's web page states: "Scheer,

Green, and Burke has a class of attorneys ready to handle all of your collection requests. Please consider us a 'one-stop shop.'[1]"

94.     The principal purpose of the Scheer, Green and Burke defendants' business is the collection of debts alleged to be due another.  Defendants regularly collect or attempt to collect debts due another through the use of the U.S. Mail, telephone and other instrumentalities of interstate commerce.

95.     The Scheer, Green and Burke defendants are "debt collectors" as defined by the Fair Debt Collection Practices Act ("FDCPA") at 15 U.S.C. § 1692a(6).

96.     AllianceOne regularly collects or attempts to collect medical debts due another, including Community Health Partners and/or Mercy Hospitals through the use of the U.S. Mail, telephone and other instrumentalities of interstate commerce.

97.     AllianceOne is a "debt collector" as defined by the FDCPA at 15 U.S.C. § 1692(a)(6).

98.     As set forth above, the Scheer, Green and Burke defendants and AllianceOne made false deceptive, and misleading representations in connection with the collection of a debt in violation of 15 U.S.C. § 1692e.  These representations include, but are not limited to, representing that Plaintiffs owed a debt for medical services that they did not and misrepresenting the amount and legal status of such debt.

99.     To the extent that AllianceOne directed, controlled or instructed the Scheer, Green and Burke defendants to take action on its behalf, or that the Scheer, Green and Burke defendants reasonably relied on (and communicated to Plaintiffs) false or misleading information created, developed or furnished by AllianceOne, AllianceOne is

---

[1] http://www.scheergreenandburke.com/Home.htm, last visited September 28, 2010.

20

liable for collection activity undertaken by the Scheer, Green and Burke defendants in its name or on its behalf and holding themselves out as representing a client that they did not.

100.    As set forth above, the Scheer, Green and Burke defendants and AllianceOne used unfair or unconscionable to collect a debt 15 U.S.C. § 1692f by inflating the amount owed for medical services and by collecting a debt that they knew to be invalid, by collecting a debt in an amount due.

101.    Further, the Scheer, Green and Burke defendants and/or AllianceOne brought action against Plaintiffs and members of the class in the name of Community Health Partners, an act that they were contractually prohibited from doing.  As a result, the Scheer, Green and Burke defendants and/or AllianceOne brought an action against Plaintiffs and class members on behalf a client that they did not represent in violation of 15 U.S.C. §1692e(5).

102.    As a result of the Scheer, Green and Burke defendants' violations of the FDCPA, Plaintiffs and members of the Class are entitled to recover actual and statutory damages for each violation.

**SEVENTH CAUSE OF ACTION:**
**VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT**
**As to the Scheer, Green and Burke Defendants and/or AllianceOne**
**(with class action allegations)**

103.    Plaintiffs repeat and incorporate herein all previously pleaded averments.

104.    The medical debt at issue was incurred for primarily personal, family, or household purposes.

105.    As collectors of consumer debt, the Scheer, Green and Burke defendants and/or AllianceOne are "suppliers" to a "commercial transaction" as those terms are defined by R.C. § 1345.01.

106.    Under Ohio law, false or misleading representation and/or unfair practices used in the collection consumer debts pursuant to the Fair Debt Collections Practices Act also constitute unfair, deceptive or unconscionable practices pursuant to the Ohio Consumer Sales Practices Act ("CSPA"), R.C. § 1345.01 *et seq.*

107.    State and federal courts sitting in Ohio have repeatedly declared acts similar to those complained of here, including falsely representing the character and amount of a debt, claiming that a consumer owes a debt that he or she does not and taking or threatening to take action that cannot legally be taken or that is not intended to be taken are unfair and/or unconscionable acts pursuant to the CSPA. Some of these decisions are available for inspection in the Ohio Attorney General's Public Inspection File, including, but not limited to: *In re: United Collection Bureau, Inc.,* Public Inspection File (PIF) No. 1002890; *State ex rel Cordray v. National Enterprise Systems, Inc.* (PIF No. 10002901), N.D. Ohio Case. No. 1:09cv2251; and *Gionis v. Javitch, Block and Rathbone,* (PIF No. 10002407) 6th Cir. Nos. 06-3048, 06-3171.

108.    Plaintiffs and members of the Classes are entitled to recover all statutory and other relief available under the CSPA.

**REQUEST FOR RELIEF**

**WHEREFORE**, named Plaintiffs Martha and Robert Polinsky, on behalf of themselves and others similarly situated, prays for: 1) an order certifying the Classes defined herein and appointing themselves and the undersigned counsel to represent them;

2) an award of statutory and compensatory damages; 3) an award of reasonable attorneys fees as provided by statute; 4) an order requiring Defendants to comply with R.C. §§ 1751.60 and 3923.81(A); 5) an award of punitive damages; 6) whatever additional legal and equitable relief that the court may deem just under the circumstances.

Respectfully submitted,

*/s/ John T. Murray*
John T. Murray (0008793)
jotm@murrayandmurray.com
Direct Dial: (419) 624-3125
Leslie O. Murray (0081496)
lom@murrayandmurray.com
Direct Dial: (419) 624-3010
Michael J. Stewart (0082257)
Stewart@murrayandmurray.com
Direct Dial: (419) 626-7008
**MURRAY & MURRAY CO., L.P.A.**
111 East Shoreline Drive
Sandusky, Ohio  44870
Telephone:    (419) 624-3000
Facsimile:    (419) 624-0707

Kevin J. Zeiher
**DOLYK & ZEIHER**
165 East Water Street
Sandusky, Ohio 44870
Telephone:    (419) 625-0515
Facsimile:    (419) 625-0170
kjzeiher@dzlpa.com
*Attorneys for Plaintiffs Martha & Robert Polinsky*

**JURY DEMAND**

A jury trial is demanded on all issues so triable.

/s/ John T. Murray
John T. Murray (0008793)
Leslie O. Murray (0081496)
Michael J. Stewart (0082257)
**MURRAY & MURRAY CO., L.P.A.**

*Attorneys for Plaintiffs Martha & Robert Polinsky*

**CERTIFICATION**

I hereby certify that on May 5, 2011, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John T. Murray
John T. Murray (0008793)
Leslie O. Murray (0081496)
Michael J. Stewart (0082257)