PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARTHA POLINSKY, *et al.*, ) | |
| ) | CASE NO. 1:10cv2544 |
| Plaintiffs, ) | |
| ) | JUDGE BENITA Y. PEARSON |
| v. ) | |
| ) | |
| COMMUNITY HEALTH PARTNERS ) | |
| REGIONAL HEALTH SYSTEMS, *et al.*, ) | |
| ) | MEMORANDUM OF OPINION AND |
| Defendants. ) | ORDER [Resolving ECF Nos. 96] |

## I. INTRODUCTION

The matter before the Court is Defendants Hal Burke, Michael Burke, and Scheer, Green and Burke L.P.A.'s (collectively "Burke Defendants") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), and, Alternatively, Motion for More Definite Statement. ECF No. 96. Plaintiffs Martha Polinsky and Robert Polinsky (collectively "Plaintiffs") have filed a brief in opposition.[1] ECF No. 102. For the reasons set forth below, the Court denies the Burke Defendants' motion in its entirety.

## II. BACKGROUND

This putative class action lawsuit arises out of an unpaid MRI medical bill of Plaintiff, Martha Polinsky, who was involved in a motor vehicle accident from which she suffered injuries. She sought medical treatment, including two MRI scans, at Defendant Community Health Partners Regional Health Systems ("CHP"). ECF No. 69 at 3-4. Ms. Polinsky's health insurer

---

[1] The First Amended Complaint alleges class action allegations.

-1-

paid all expenses, with the exception of a bill related to the MRI Scans. ECF No. 69 at 4. Eventually, the unpaid bill was termed delinquent and referred by CHP to Defendant Alliance One ("Alliance One") for collection. After several unsuccessful attempts to collect payment, the account was referred to the Burke Defendants to collect the debt, and to initiate a debt collection lawsuit. ECF No. 96 at 7. The complaint, in what the Court will refer to as to the debt collection lawsuit ("Debt Collection Complaint"), was filed in Norwalk Municipal Court on September 30, 2009, and the Debt Collection Complaint was served to Plaintiffs on October 7, 2009. ECF No. 69 at 7. The debt collection lawsuit was later voluntary dismissed on February 5, 2010. ECF No. 69 at 7-8.

Plaintiffs initiated the instant case by filing a complaint ("FDCPA Complaint") in the Lorain County Common Pleas Court of Ohio on October 1, 2010. After the action was removed to federal Court, Plaintiffs filed their First Amended Complaint on May 5, 2011, lodging a combined total of seven causes of action against CHP, Alliance One, and the Burke Defendants. ECF No. 69. Two of the seven causes of action are alleged against the Burke Defendants based upon the premise that they allegedly committed unfair and deceptive collection practices when they misrepresented that the Plaintiffs "owed a debt for medical services that they did not." ECF No. 69 at 19-22. Plaintiffs allege that the Burke Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692e-f. Plaintiffs also allege that the Burke Defendants conduct likewise violated the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. §1345. ECF No. 69 at 19-22.

On June 24, 2011, the Burke Defendants filed the instant motion to dismiss or, in the alternative, motion for a more definite statement with respect to the allegations asserted against

them. ECF No. 96. Plaintiffs have filed their response. ECF No. 102. The time allotted for the filing of a reply has passed without the Burke Defendants filing a reply. The motion is now ripe for ruling.

### III. STANDARDS OF REVIEW

**A. Motion to Dismiss Pursuant to 12(b)(6)**

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of the complaint. *See Davis H. Elliot Co., Inc. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975). When considering such a motion, the Court must take all well pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

To be considered plausible, a claim must be more than merely conceivable. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The

factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Fed. R. Civ. P. 9(b) requires allegations of fraud to be pled with particularity, identifying the "who, what, when, where, and how" of the alleged fraud. *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal citation omitted).  If allegations of fraudulent conduct are based upon information and belief, " . . . the complaint must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id*. at 878 (internal quotations and citations omitted).

### B. Motion for More Definite Statement

Fed. R. Civ. P. 12(e) states, in pertinent part, "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  The Supreme Court has held that "[t]he remedy for an allegation lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement." *Twombly*, 550 U.S. at 590, n.9.

### IV.  ANALYSIS AND RULINGS

### A. Plaintiffs' FDCPA Claims

"Congress enacted the FDCPA in order to eliminate the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.  The statute is very broad, and was intended to remedy what it considered to be a widespread problem."  *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) (internal quotations and citations omitted).

In the First Amended Complaint, Plaintiffs allege that the Burke Defendants violated two provisions of the FDCPA: 15 U.S.C. § 1692e, which prohibits false representation of the character, amount, or legal status of any debt; and 15 U.S.C. § 1692f, which prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt. ECF No. 69 at 20-21.

Plaintiffs' claims appear to be premised upon several alleged actions by the Burke Defendants to collect the medical bill payment including: 1) billing Plaintiffs, 2) filing a debt collection lawsuit against Plaintiffs, and 3) contacting Plaintiffs' counsel. ECF No. 69 at 7,19-20.

The Burke Defendants assert, however, that Plaintiffs' FDCPA claims should be dismissed and raise the following arguments to support this position.  They first argue that Plaintiffs' claims arising out of the alleged improper billing of Plaintiffs and filing of the debt collection lawsuit are time-barred.  Additionally, Defendants contend that Plaintiffs' FDCPA claims premised upon communication with Plaintiffs' Counsel are not covered under the Act.  Defendants also attack Plaintiffs' § 1692(e) claims, and argue that these claims fail because Defendants had no duty to investigate the validity of the debt, Defendants complied with the notice requirements of § 1692g(a), and were authorized to file the debt collection lawsuit on behalf of CHP.  ECF No. 96 at 19-29.  The Court addresses each argument below.

**1. Whether Plaintiffs Claims Are Time-Barred**

15 U.S.C. § 1692k(d) states that actions to enforce liability for violations of the Act may be brought "within one year from the date on which the violation occurs."  Thus, this provision places a one year statute of limitations on FDCPA claims.

-5-

The Burke Defendants contend Plaintiffs' claims arising out of the improper billing of Plaintiffs and initiating a collection lawsuit against Plaintiffs fall outside of the FDCPA's one year limitations period. ECF No. 96 at 19-23. They provide the following timeline: As to the conduct of improperly billing Plaintiffs, Defendants admit that they mailed a debt verification letter to Mrs. Polinsky on August 23, 2009. And concerning initiating the debt collection lawsuit, the Burke Defendants highlight that they filed their Debt Collection Complaint against Plaintiffs on September 30, 2009. Reasoning that the statute of limitations was triggered, at the latest, when Defendants filed the Debt Collection Complaint, Defendants then remind the Court that Plaintiffs' FDCPA Complaint against the Burke Defendants was filed on October 1, 2010–more than one year after Defendants mailed the debt verification letter and filed the Debt Collection Complaint. ECF Nos. 96 at 14.

Plaintiffs respond by disputing the Burke Defendants purported timeline, which they argue, incorrectly limits Defendants' collection activity to a letter and the filing of the lawsuit. Plaintiffs ultimately contend, however, that even if the Burke Defendants timeline were accepted as true, the one-year statute of limitations began to run no earlier than October 7, 2009, the date that Plaintiffs were served with the Debt Collection Complaint, and not on September 30, 2009, the date the Debt Collection Complaint was filed. Thus, Plaintiffs argue that, minimally,[2] their

---

[2] As to the Burke Defendants' allegation that Plaintiffs' FDCPA claim premised upon Defendants "[i]mproper[ly] [b]illing Plaintiffs" is untimely, Plaintiffs appear to concede this argument, to the extent that Defendants have limited the action of [i]mproper[ly] [b]illing Plaintiffs" to Defendants mailing of the August 23, 2009 debt verification letter. Plaintiffs however, point the Court to the First Amended Complaint, which also contains allegations that the Burke Defendants continued to call and write Plaintiffs directly about the inflated medical bill through the Fall of 2010. ECF Nos. 69 at 8 ¶ 32 and 102 at 28-29. Plaintiffs assert that these FDCPA claims are sufficiently pleaded to survive the motion to dismiss. ECF No. 102 at 29.

(continued...)

FDCPA claims arising from the debt collection lawsuit are timely because the FDCPA Complaint was filed on October 1, 2009–within one year of being served with the Debt Collection Complaint. ECF No. 102 at 23-28.

The Court is, therefore, confronted with the question of whether the statute of limitations on an FDCPA claim premised on an unlawful collection action accrues on the date the complaint is filed or the date the complaint was served upon the alleged debtor. The Sixth Circuit has not yet addressed this issue.[3] The two federal appellate court decisions that have touched upon this issue support opposite conclusions.[4]

While the Burke Defendants rely principally upon the Ninth Circuit Court of Appeals' case, *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), which held "that the statute of limitations began to run on the filing of the complaint in the Municipal Court," the Court finds the Tenth Circuit Court of Appeals' decision in *Johnson v. Riddle,* 305 F.3d 1107 (10th Cir. 1997), more persuasive.

In *Johnson*, the Tenth Circuit rejected the argument that an FDCPA violation occurred upon filing of a complaint rather than service, reasoning that the filing of the debt collection lawsuit, in the absence of service, is only "half [of] an actionable wrong," *i.e.* an "attempt to

---

²(...continued)
The Court agrees with Plaintiffs' assessment. And in absence of an argument from the Burke Defendants on the issue of timeliness, the Court concludes that Plaintiffs' FDCPA claims premised upon the Burke Defendants' calling and writing Plaintiffs withstand the instant motion.

³ *See Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010).

⁴ *Compare Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (indicating that such claims accrue upon filing the underlying action) with *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002) (holding that claims accrue once the debtor is served with the complaint).

collect" the debt within the meaning of the statute. *Id*. at 1113-14. The Tenth Circuit further rejected the defendant's reliance upon *Naas*, after noting that the case was factually distinguishable. Unlike the circumstance presented in *Johnson*, the litigant in *Naas* "did not argue that the limitations period began at filing, because if he had his claim still would have been time-barred. Instead, he argued that the limitations period did not run until the collection suit judgment was upheld by the appeals court." *Johnson*, 305 F.3d at 1114 , n.4 (citation omitted). Thus, the Tenth Circuit acknowledged that Naas court "never discussed, and apparently never considered, the possibility that the claim accrued upon service" because "the choice between accrual upon filing and accrual upon service was not before the court in *Naas*." *Id*.

Additionally, the Tenth Circuit commented upon the adverse implication of adopting the position espoused by *Naas*, stating that "if the limitations clock began to run with service of process rather than with filing suit, somebody in [the defendant's] position could effectively block any action under the federal statute by filing suit and then delaying service." *Id.* at 1114. Thus, the Tenth Circuit found this result to be further evidence that Congress did not intend for the statute to be interpreted as *Naas* suggests.

The Court finds the *Johnson* decision well reasoned and, therefore, agrees with its determination that where the plaintiff's FDCPA claim arises from the instigation of a debt collection lawsuit, the statute of limitation accrues on the date of service. *See Langendorfer v. Kaufman*, 2011 U.S. Dist. LEXIS 94100, *8-9 (S.D. Ohio 2011) (adopting the holding in *Johnson*); *Zigdon v. LVNV Funding, LLC*, 2010 LEXIS 53813,*31 (N.D. Ohio 2010) (finding FDCPA statute of limitations began to run at the time of service). Applying *Johnson's* holding to the instant case, the Court concludes that the statute of limitations for Plaintiffs' FDCPA claims

-8-

premised upon the Burke Defendants' debt collection lawsuit accrued on October 7, 2009–the date Plaintiffs were served with the Debt Collection Complaint. For this reason, the aforementioned FDCPA claims filed on October 1, 2010 are timely.

### 2. Whether Plaintiffs' Claims Arising Out of Communications to Plaintiffs' Attorney are Covered under the FDCPA

The Burke Defendants next contend that to the extent that Plaintiffs' FDCPA claims are premised upon Defendants' communication to Plaintiffs' counsel (ECF No. 69 at 7 ¶29), the claim cannot lie because statements made to a debtor's attorney are not actionable under the FDCPA. ECF No. 96 at 28-29. The Court disagrees.

Whether communications to a debtor's attorney are within the scope of the FDCPA has not been determined by the Sixth Circuit,[5] and the Circuit Courts that have examined the issue are split.[6] Nevertheless, the Court finds the following two appellate court cases particularly instructive–*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232-33 (4th Cir. 2007) and *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 773 (7th Cir. 2007).

In *Sayyed*, the Fourth Circuit held that a communication to the debtor's counsel is within the scope of the FDCPA. 486 F.3d at 232. In reaching its conclusion, the Fourth Circuit noted that "the statute defines 'communication' broadly as 'the conveying of information regarding a debt directly or indirectly to any person through any medium.'" *Id.* at 232 (quoting 15 U.S.C. § 1692a(2)). The Court, therefore, reasoned that "communication to debtor's counsel . . . plainly

---

[5] *See Barany-Snyder v. Weiner*, 539 F.3d 327, 333 n.2 (6th Cir. 2008).

[6] *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) (FDCPA applies); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232-33 (4th Cir. 2007) (FDCPA applies); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934-39 (9th Cir. 2007) (FDCPA does not apply); *Kropelnicki v. Siegel*, 290 F.3d 118, 129-31 (2d Cir. 2002) (FDCPA does not apply).

-9-

qualifies as an indirect communication to the debtor." *Id.*

Taking a slightly different approach, the Seventh Circuit in *Evory*, found that the FDCPA covers communications submitted to attorneys under the Act. 505 F.3d at 773-75. Analyzing §§ 1692e and 1692f–which are the same provisions raised in this case–as well as § 1692d, the Seventh Circuit observed that the plain reading of the provisions' statutory text did not exclude those communications to a debtor's attorney. The Court stated that the provisions failed to "designate any class of persons, such as lawyers, who can be abused, misled, *etc.*, by debt collectors with impunity." *Id.* at 773. In other words, the Court illuminated that while the statutory text of §§ 1692e and 1692f places restrictions upon the types of actionable conduct, the text does not place similar restrictions upon the types of persons whom may be subjected to conduct giving rise to a violation under the Act, nor the types of recipients of the conduct giving rise to a violation under the Act.[7]

The conclusions drawn in *Sayeed* and *Evory* seemingly comport with two Supreme Court decisions interpreting the FDCPA–*Heintz v. Jenkins*, 514 U.S. 291 (1995) and *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (2010). Although neither case addressed the precise issue before this Court, both decisions lend support to adopting a more expansive interpretation of the FDCPA to include communications sent to a debtor's attorney.

The first case, *Heintz,* involved a claim under the Act based upon communication from a "lawyer who 'regularly,' through litigation, tries to collect consumer debts" and required the

---

[7] Section 1692e forbids a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  And § 1692f forbids a debt collector to "use any unfair or unconscionable means to collect or attempt to collect any debt."

Court to examine whether the debt-collecting lawyer could be considered a "debt collector" under the Act. *Heintz*, 514 U.S. at 292. In holding that such lawyers are included within the FDCPA's definition of "debt collector," the Court concluded that the debtor had a cause of action for the communication sent to her counsel. *Id*. at 294. Thus, the Supreme Court implicitly suggested that communications submitted to a debtor's attorney were covered under the Act. *See Sayyed*, 485 F.3d at 233.

And in *Jerman*, the Supreme Court reaffirmed the FDCPA's "broadly worded prohibitions on debt collector misconduct,"[8] and rejected an interpretation of the Act that would provide immunity for said misconduct merely because the debt collector relied upon a mistaken interpretation of the Act's legal requirements. *See Jerman*, 130 S. Ct. at 1611. After noting that the alternative reading of the Act would permit debt collectors to "obtain blanket immunity for mistaken interpretations of the FDCPA simply by seeking the advice of legal counsel," the Court concluded that allowing such a loophole would not only be inconsistent with the statutory text prohibiting debt collector misconduct, but also with the congressional purpose of the Act "to eliminate abusive debt collection practices by debt collectors . . . ." *Id*. at 1623. Thus, the *Jerman* ruling suggests that, from a practical standpoint, this Court should abstain from interpreting the FDCPA in a way that would have the effect of immunizing a wide range of conduct that otherwise would be actionable.

Adopting an interpretation of the FDCPA that would exclude communications submitted to a debtor's attorney, however, would do just that. Debt collectors would obtain "blanket immunity" simply because the communication is targeted to a debtor's attorney, rather than the

---

[8] *Jerman*, 130 S. Ct. at 1623.

debtor. On the other hand, debtors would be penalized for attempting to protect themselves by obtaining counsel. Surely, such practical consequences fail to comport with principles of fairness, the FDCPA's "broadly worded prohibitions on debt collector misconduct,"and the Act's expansive and overarching purpose. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) (indicating that the FDCPA is very broad and was intended to remedy a widespread problem).

Yet, the Burke Defendants assert that the Ninth Circuit decision in *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007), which dictates a contrary result, should be followed here. In *Guerrero*, the Ninth Circuit held that FDCPA does not apply to "communications directed solely to a debtor's attorney." *Id*. at 934. The sections at issue were §§ 1692e and 1692g(b). After analyzing a number of provisions of the FDCPA that the Court found distinguished between a consumer and the consumer's attorney,[9] the Court determined that debtors and their attorneys are to be treated differently under the FDCPA. *Guerrero*, 499 F.3d at 934-35. The Court further reasoned that the Act was designed to afford protection to vulnerable and unsophisticated consumers and, because "[a]ttorneys possess exactly the degree of sophistication and legal wherewithal" to protect consumers from a debt collector's fraudulent or harassing behavior, the Court concluded that the purpose of the Act would not be served by applying its strictures to communications sent only to a debtor's attorney. *Id*. at 938-39.

The Court declines to follow *Guerrero* lead. The Ninth Circuit's holding is inconsistent with plain language of the FDCPA. As the dissent in *Guerrero* points out, although the

---

[9] The Court primarily analyzed provisions contained in § 1692c "Communication in connection with debt collection." *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934-935 (9th Cir. 2007).

provisions at issue in *Guerrero* were §§ 1692e and 1692g(b), the majority's analysis focused almost exclusively on § 1692g(b), and therefore failed to analyze § 1692e on that section's own terms. *Guerrero*, 499 F.3d at 943 (Fletcher, J. dissenting). Notably, § 1692g(b) is not even at issue in this case. Thus, unlike the analysis contained in *Sayyed* and *Evory*, which examined relevant statutory provisions, the analysis in *Guerrero* offers little guidance.

Additionally, *Guerrero*'s reliance upon the heightened sophistication level of attorneys, compared to that of consumers for its adoption of a strict statutory of the FDCPA fails to entice this Court to alter its conclusion. As stated by the Seventh Circuit in *Evory*:

> It is true that a lawyer is less likely to be deceived, intimidated, harassed, and so forth [] than a consumer. But that is an argument not for immunizing practices forbidden by the statute when they are directed against a consumer's lawyer, but rather for recognizing that the standard for determining whether particular conduct violates the statute is different when the conduct is aimed at a lawyer than when it is aimed at a consumer.

See *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007).

In light of the above discussion, the Court holds that communications submitted to a debtor's attorney are not categorically excludable under the FDCPA.[10] Accordingly, Plaintiffs' FDCPA claims arising out of the Burke Defendants' communication to Plaintiffs' counsel are not subject to dismissal at this juncture.

---

[10] The sole question raised in Defendants' motion is whether communications to a debtor's attorney, rather than directly to the debtor, are *per se* not actionable under the FDCPA. See *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007).

### 3. Whether Plaintiffs' Section 1692(e) Claim Fails Because Defendants Had No Duty to Investigate & Complied with Section 1692g(a)

In the First Amended Complaint, Plaintiffs allege that the Burke Defendants violated § 1692(e) by representing that "Plaintiffs owed a debt for medical services that they did not"owe. ECF Nos. 69 at 20 ¶ 98 and 96 at 23-27. The Burke Defendants contend that this claim fails as a matter of law for two reasons. First, they contend that Plaintiffs' claim fails because it is based upon the faulty premise that the Burke Defendants had a duty to investigate the validity of the debt, *i.e.* "the referral from Alliance One and CHP," before filing the debt collection lawsuit. ECF No. 96 at 24. They assert no such duty exists under the Act. ECF No. 96 at 23-25. Second, they contend that Plaintiffs' claim fails because Defendants complied with the notice requirements of § 1692g(a), which requires the debt collectors to send verification notice of the debt to debtors. Defendants state that given the fact that Plaintiffs' First Amended Complaint is bereft of any allegation that Plaintiffs disputed the debt in writing within the time provided by the Defendants, they were legally entitled to presume that the debt was valid and, therefore, no cause of action exists against them. ECF No. 96 at 23-26.

The Court finds both arguments unavailing. As a preliminary matter, the Court notes that the Burke Defendants' arguments are based upon an erroneous view of the law. Although the Sixth Circuit has recognized that the FDCPA does not require an independent investigation of the debt referred for collection,[11] a point that Plaintiffs do not dispute (ECF No. 102 at 20), compliance with the notice requirements of § 1692(g) does not necessarily protect a debt collector from liability resulting from violations of other provisions of the Act. *See Clark v.*

---

[11] *See Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992)

-14-

*Capital Credit & Collection Servs*., 460 F.3d 1162, 1174-75 (9th Cir. 2006) (finding that the debt collector complied with § 1692(g) by obtaining verification, but violated § 1692e(2)(A) by misrepresenting the debt's character and amount).

A debt collector may, however, escape liability through the *bona fide* error defense. Pursuant to § 1692k(c), "[a] debt collector may not be held liable in any action brought under this title [15 USCS §§ 1692 *et seq*.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." And as indicated by the Act, the burden of proving that the debt collector committed a *bona fide* error is placed on the debt collector. *See* 15 § 1692k(c); s*ee also Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1034 (6th Cir. 1992) (stating that ". . . the *bona fide* error defense is an affirmative defense. The burden is on the debt collector to prove . . .").

In the instant case, the Burke Defendants have failed to even raise the *bona fide* error defense, let alone satisfy its heavy burden. Therefore, the Court concludes that they are not entitled to judgment as a matter of law concerning the aforementioned claim. *See also Dues v. Capital One, NA*, 2011 U.S. Dist. LEXIS 96435, *8, n.2 ( E.D. Mich. 2011) (refusing to consider arguments targeted toward establishing the *bona fide* error defense because such arguments were premature at the motion to dismiss stage).

### 4. Whether Plaintiffs' 1692e(5) Claim Fails Because Defendants Were Authorized to File the Debt Collection Lawsuit

Section 1692e(5) prohibits debt collectors from threatening "to take any action that cannot legally be taken or that is not intended to be taken." In the First Amended Complaint,

Plaintiffs allege that the Burke Defendants violated this provision of the Act, by filing the debt collection lawsuit against Plaintiffs on behalf of CHP, whom Plaintiffs allege is "a client that [the Burke Defendants] did not represent." ECF No. 69 at 21 ¶ 101. Plaintiffs' allegation is premised upon their assertions that the Burke Defendants were contractually prohibited from filing the lawsuit. ECF No. 69 at 21 ¶ 101.

The Burke Defendants argue that this claim fails because, according to Defendants, they were, in fact, authorized to file the underlying lawsuit on behalf of CHP. ECF No. 96 at 27-28

The Court finds Defendants' argument unavailing. At the motion to dismiss stage, the Court must accept as true all of Plaintiffs' factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 94 ( 2007). Given that the Burke Defendants' argument amounts to no more than a retort disputing Plaintiffs' version of the facts, the Court concludes that Plaintiffs' allegations are sufficient to withstand the Burke Defendants' motion.[12]

### B. Plaintiffs' OCSPA Claims

In the First Amended Complaint, Plaintiffs allege that the Burke Defendants' conduct also violated the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. §1345 *et seq*. ECF No. 69 at 21-22. The Burke Defendants assert, however, that dismissal of these claims are warranted, and provide two reasons to support this assertion. ECF No. 96 at 29-30.

---

[12] Additionally, to the extent that the Burke Defendants' argument is similar to their preceding argument that they are exempt from liability based upon their compliance with a rule or regulation, the Court rejects this argument for the same reasons espoused above. The Burke Defendants have, minimally, failed to prove that they are entitled to exemption pursuant to the *bona fide* error defense. Moreover, the Court finds such argument to be inappropriate at this early stage of the litigation. *See Dues v. Capital One, NA*, 2011 U.S. Dist. LEXIS 96435, *8, n.2.

### 1. Failure to Plead with Specificity Under Rule 9(b)

First, the Burke Defendants contend that Plaintiffs have failed to plead their OCSPA claim with particularity, as required by Rule 9(b). ECF No. 96 at 29. As indicated above Rule 9(b) mandates that in claims involving fraud, one must plead the circumstances concerning fraud or mistake with particularity. Plaintiffs, however, respond by asserting that the rule is inapplicable here because the heightened pleading standard does not apply to claims brought under the OCSPA. ECF No. 102 at 29-30.

The Court is aware that there is a split in case law regarding whether one must comply with the particularity requirement of Rule 9(b) in pleading claims arising under the OCSPA. At least one district court Judge within this Circuit has concluded that Rule 9(b) does not apply to OCSPA claims. *See Ferron v. Search Cactus, L.L.C.*, 2007 U.S. Dist. Lexis 44473,*11-12 (S.D. Ohio 2007). The Judge's conclusion turned on the implicit rationale that unfair or deceptive acts under the OCSPA need not rise to the level of fraud, as the Judge noted that "the word 'fraud' is nowhere to be found in the statute." *Id*. at *12.

But at least two judicial officers within this Circuit have reached the opposite conclusion, finding that "Rule 9(b) applies in cases such as this because actions for deceptive trade practices are, at their core, fraud claims." *Ferron v. Subscriberbase Holdings, Inc*., 2009 U.S. Dist. Lexis 23583, * 16, n.4 (S.D. Ohio 2009) (citing *Ferron v. Zoomego, Inc.*, 2007 U.S. Dist. Lexis 48292 (S.D. Ohio 2007)).

The Sixth Circuit has not yet ruled upon this issue,[13] and the undersigned finds that, in this case, it is unnecessary to adopt a definitive stance. Assuming, for the sake of the argument,

---

[13] *See Ferron v. Zoomego, Inc.*, 276 Fed. Appx. 473, 476 (6th Cir. 2008).

that the heightened pleading standard of Rule 9(b) is applicable to Plaintiffs' OCSPA claims, the Court concludes that Plaintiffs' pleadings have satisfied that standard.

> In discussing its "long-standing holding that, under Rule 9(b), a plaintiff must 'allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud'" the Sixth Circuit has "also made clear, however, [that] this requirement should be understood in terms of Rule 9(b)'s broad purpose of ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007)). The pleadings here, although they could be more detailed in some specifics, nonetheless present sufficient particularity to enable Defendants to begin mounting a competent defense.

*Ferron v. Metareward, Inc.*, 698 F. Supp. 2d 992, 1001 (S.D. Ohio 2010) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680, n.9 (6th Cir. 1988).

Accordingly, the Court finds Plaintiffs' FDCPA claims are sufficiently pleaded to survive the Burke Defendants' motion to dismiss. And, no more definite statement is necessary to place defendants on notice of the allegations against them.

### 2. Lack of Independent Facts

Next, the Burke Defendants argue that the instant claims must be dismissed on the grounds that the claims lack independent facts alleged to support them. After reminding the Court that Plaintiffs' OCSPA claim shares the same factual underpinnings as the FDCPA claims, the Burke Defendants assert that "[c]ommon sense dictates that [because] plaintiffs' FDCPA claims are without merit, then any cause of action arising out the OCSPA must also fail as a matter of law." ECF No. 96 at 30.

-18-

Needless to say, Defendants' argument for dismissal fails as it based upon a faulty premise. The Court has already rejected their contention that Plaintiffs' FDCPA claims lack merit. Therefore, dismissing Plaintiffs' parallel OCSPA claims are inappropriate.

**C. More Definite Statement**

Lastly, the Burke Defendants argue, in the alternative, that if the Court does not dismiss the case, then Defendants are entitled to have its motion for a more definite statement granted. Defendants specifically request that the Plaintiffs amend their complaint to include the dates, time and places of the alleged communications between the Burke Defendants and that the Plaintiffs also specify the person making the communications and to whom the communications were directed. ECF No. 96 at 31.

The Court disagrees. As the above discussion has indicated, the Court finds that Plaintiffs' allegations are sufficiently pled to put the Defendants on notice regarding the nature of Plaintiffs claims. That is all that is required at this stage of the litigation.

**V. CONCLUSION**

For the foregoing reasons, the Burke Defendants' motion to dismiss, or in the alternative, motion for a more definite statement is denied in its entirety.

IT IS SO ORDERED.

| | |
|---|---|
| March 9, 2012 | *s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | U.S. District Judge |